McKinney, J.
delivered the opinion of the Court.
The error complained of in this cause is, that upon granting a divorce from the bond of matrimony — which is not sought to be questioned — the Chancellor decreed that the defendant should pay to complainant the sum of $2700 00, being’ more than double the value of his entire estate.
It seems from the proof, that the complainant is only eighteen years of age, and that she separated from the defendant a few months after the marriage, in consequence of ill-treatment. The parties are both of families of respectability, and considerable wealth. — ■ Shortly after "the marriage, the defendant’s father put him in possession of a tract of land, valued at from seven to eight thousand dollars, under perhaps a verbal promise that he would convey it to him; and gave him, absolutely some personal: property of but little value. The father of complainant, sent with her, but without parting with the title, a -negro woman and child, and some articles of personal property necessary *250 to house-keeping; all of which were restored to the complainant, on the separation, and the defendant made sale of all his personal property, with the view of a removal to Texas.
It was referred to the Master, to enquire and report the value of the defendant’s estate, and what ought to be allowed to the complainant. The Master in his report, estimated the value of defendant’s estate at $1155 00. He also estimated that it would require $200 00 per annum to furnish complainant a reasonable maintenance: and that from his calculation of the probable duration of her life, she was entitled to receive the sum of $2700 00. The report was not excepted to, and the Chancellor adopted it, and decreed accordingly. The principle of the decree is altogether erroneous. The latest statutory provision upon this subject, (act of 1842, ch. 133, sec. 2,) empowers the Court, in all cases of divorce, to decree to the wife so divorced, such part of the real and personal property of the husband as the Court shall thinlc proper, having reference, of course, to all those considerations which properly belong to the determination of the question.' This provision, though in terms applicable to all cases of divorce, obviously was intended to apply only to divorces from the bond of matrimony. There is, both in reason and upon authority, a very wide distinction in the principle upon which an allowance is made to the wife in cases of divorce a mensa and a vinculo. Upon a divorce from bed and board merely, the marriage relation is left intact, and continues to subsist as before such decree. The only effect is, a cessation for a definite, or indefinite period, of matrimonial cohabitation. It deprives the wife of none *251 of the rights belonging to that relation in the event of a reconciliation, or in the event of'her surviving her husband. The marital obligation of the hnsbancl suitably to maintain the wife, according to his condition and ability, continues to exist, after the separation, as before. The ordinary practice in such cases is, not to decree to the wife, absolutely, a certain proportion of the husband’s estate, but to give her alimony; that is, to make an allowance in money for her separate maintenance, payable at intervals from time to time, to continue until a reconciliation, or until otherwise ordered by the Court. And the husband cannot be discharged from the obligation to furnish such maintenance after the separation any more than before, on the ground that his estate or income is inadequate. Though that be so, yet it is clear, that his future income, from whatever sources derived, including the' earnings of his personal labor, and all 'subsequent acquisitions, is chargeable with such allowance. This necessarily results from the continuance of the marriage relation; but it lasts no longer than the existence of such relation; with its dissolution the duty of maintenance is at an end.
And hence, in case of a divorce a vinculo, which extinguishes the marriage relation, and leaves the parties as if the marriage had never taken place, a very different rule prevails. In the 'latter case, the duty of maintenance, on the part of the husband, is at an end, as much as if. a dissolution had been effected by the death of the wife. And the ■ course generally is, to make a reasonable division of the husband’s estate; and to vest in the wife absolutely a specific portion thereof. Such is the rule prescribed by the act before referred *252 to. Upon a divorce of tbis nature, the wife can have no claim on tbe future earnings, or acquisitions of the husband, any more than upon his protection, society, or other conjugal rights, or duty; he is alike discharged from them all. And if, upon the divorce, nothing can be given to her, or less than may be suitable to her rank, and condition in life, by reason of the husband’s poverty, it is her misfortune, to which she must submit.
Under the circumstances, we think the complainant, is entitled to all that can be realized from the fund arising from the proceeds of the property of the defendant, mentioned in the Master’s report; and if the full amount of $1,155,00 cannot for any cause be realized, she will have a decree against the defendant and his security for the prosecution of the writ of error, for the deficit.
The bond for the prosecution of the writ of error in this case is insufficient. By the act of 1831, ch. 49, sec, 1 — in Chancery cases, where money has been decreed to be paid; on an appeal to the Supreme Court, the penalty of the bond must cover the amount so decreed, as well as costs; but where no money is decreed to be paid, the bond is required to be for costs only.
The same rule must be applied to a writ of error. A new bond may be now given, and if this shall not be done, the writ of error will be dismissed.